Bissell, P. J.,
delivered the opinion of the court.
In December, 1889, the appellee, Rubenstein, was a passenger on the Rio Grande Western Railroad, traveling from Salt Lake City to Denver. During the journey, and at a point between two stations on the road called Soldier’s Summit and Clear Creek, the car in which he was riding overturned and Rubenstein was considerably hurt. He brought this action to recover for the injuries. To summarize his allegations, he charged in his complaint that the roadbed, ties and rails were in an unsafe and dangerous condition; alleged that the roadbed was loose and unstable; that the ties were rotten and decayed, the rails insecurely fastened, and by reason of all these things the way was in a dangerous condition, and it was negligence for the company to operate its trains on it. In making his proof, however, he failed to offer any testimony concerning these several allegations, but contented himself with proving that he was a passenger for hire, that the car overturned and he, was injured to the extent of his damages. On this circumstance is based one of the principal errors assigned by the appellant, viz: There was such a variance between the pleading and the proof that it was entitled to a nonsuit on the conclusion of the plaintiff’s case.
In proving the extent of his injuries and the damage whicli he had sustained, Rubenstein showed he was a traveling salesman in the employ of a New York house. His compensation was made up partially of a salary and his expenses paid by the house, and partially by commissions which were computed upon the total of his sales during the fiscal year. While giving his evidence, he was asked as to the value of his time at the season when he was laid up. The company objected to the proof, putting its objection on the naked ground that it was not competent for the plaintiff to show what profits he might have made during the time he was confined to his room and incapacitated from transacting business. The objection was overruled, with the suggestion by *123 the court that whether they were properly recoverable might be developed by the cross-examination of the witness. Ruben-stein answered that the value of his time was three dollars per day. The recovery was increased some sixty dollars, probably on the basis of this value. The witness was not examined concerning the estimate, and the record is silent as to the foundation of the valuation which the witness put on his time.
During the progress of the trial the plaintiff offered proof as to his injury, and stated that he used a good many handkerchiefs to staunch the blood, which measurably was supposed to show the severity of his hurt. The company attempted to controvert this evidence by the production of a physician, as an expert, of whom they inquired concerning the amount of blood which the evidence would indicate the injured party had lost. The court excluded the evidence and the company saved their exception.
This statement of facts very clearly indicates the principal propositions on which the appellant relies to reverse the case. None of its positions are well taken. It has been held in some jurisdictions, in cases of this description, that where a plaintiff charges negligence of a particular sort, he is limited in his proof to the causes specified, and he must offer some testimony in support of his allegations in order to sustain a recovery. The general rule undoubtedly is that the passenger who shows he is being carried for hire, and that the vehicle overturns and occasions him injury, has made out a prima fade case. The legal presumption, in actions of this description, is that the injuries are occasioned by the fault of the carrier or the condition of its vehicles, and the law casts on it the burden of showing that it has used reasonable care and skill to provide safe appliances and a safe road for the transportation of its passengers. This rule has been recognized by the supreme court, and is, therefore, the law of the state. Sanderson et al. v. Frazier, 8 Colo. 79.
This narrows the inquiry to the simple proposition whether, having charged negligence of a particular kind, the plaintiff *124 may still prove that he was a passenger for hire, the happening of an accident of this sort, and, relying upon the prima fade case which he has made out, rest upon the legal presumption which would obtain in the case of a general charge of negligence. It is unnecessary to decide this precise question. When the plaintiff concluded, the defendant moved for a nonsuit. The defendant did not rest on its exception to the ruling of the court denying its application, but went into its case and made its proof. This very clearly brings the case within the doctrine of a recent decision of the supreme court, in Salazar v. Taylor, 18 Colo. 588.
If there was a variance, it did not result in an error which affected the substantial rights of the parties. It might have been proper for the court to insist, as in the case cited, that there should be an amendment to make the case conform to the general rules in such matters, and to make the pleading entirely accurate as a statement of the plaintiff’s cause of action. If it occasioned surprise, it might have resulted in delay, but the appellant’s rights could have been fully protected by the entry of the necessary order. This course was clearly indicated by the Salazar Case, where it was likewise decided that even though the variance might be apparent, the court would not reverse the judgment where it was evident the defendants were neither harmed nor surprised by what had been done on the trial. The present case comes clearly within the doctrine there enunciated, and it is very manifest that the railroad company was fully advised as to the situation and fully prepared to try the case, and simply raised the question as a technical proposition on which it hoped to defeat the plaintiff’s recovery. It was neither surprised nor prejudiced. The error is a harmless one, and the judgment will not be reversed for this reason.
There is not much more difficulty with the proposition that the verdict is vicious, because it includes what.the appellant terms profits as part of the damages recovered. It is not universally true that in actions for damages profits may not be recovered. Uncertain and contingent profits, which *125 are not the immediate results of the breach, may not be included in the recovery in actions of this description. The trouble, ordinarily, with respect to profits, is that the conclusion proceeds upon contingencies, and requires a knowledge of the market as to all values which cannot be ascertained with exactness or determined with the accuracy essential to the instruction of the jury. That profits of certain descriptions and under certain circumstances may be recovered in this jurisdiction was early determined in Western Union Telegraph Co. v. Graham, 1 Colo. 230. The court there recognized the rules laid down by the courts in New York in the earlier cases, which have since been followed in well considered adjudications. Wakeman et al. v. The Wheeler & Wilson Mfg. Co., 101 N. Y. 205; Swain v. Schieffelin, 134 N. Y. 471.
The present case does not call for any extended discussion of the question, nor any attempt to justify the recovery of the sixty dollars which was included in the verdict. In the first place, they were not profits in the sense in which that term is used in the cases which discuss the right to recover profits as such in actions brought for a breach of contract. It is quite true that the proof was objectionable in the form in which it was offered, and that the proper course was not taken to establish the recovery in this respect, although evidence establishing the same facts could have been introduced, and the rules respecting such matters been carefully observed. It was entirely competent for the plaintiff to show the business in which he was engaged, the extent and amount of his ordinary business, and thus lay the foundation which would enable the jury to ascertain the direct and necessaiy damages which would result from the injury. This rule was clearly laid down by the supreme court of the United States in a well considered case. Nebraska City v. Campbell, 2 Black, 590.
In that case the court held that where a suit was brought by a physician against a city to recover damages for a defective bridge, it was entirely competent for him to show the extent and character of his practice, the condition of the public health at the time, that the jury might be able there *126 from to determine the harm which he had sustained from the loss of his practice. The same principle must control here, and while, perhaps, it was objectionable to permit the plaintiff to testify that his time was worth a fixed sum, the same result would have been arrived at by permitting him to prove the extent and character of his business, the nature of his occupation, that the jury might gather therefrom what harm he had sustained. The form which the proof took, the circumstances under which it was offered, the failure of the defendant to demonstrate by examination its incompetency destroys the value of the exception as a basis for reversal. The same damages would probably have been allowed by the jury if the proof had taken the precise shape which an exact observance of the rules of evidence would probably require. The amount of this item, which is included in the verdict, to wit, sixty dollars, is so insignificant a part of the recovery that it scarcely warrants this extended discussion.
The defendant company offered to prove by a physician the amount of blood which Rubenstein probably lost. The doctor’s opinion was asked on a statement by counsel of the number of handkerchiefs which, according to the testimony of the witnesses, had been saturated with blood in wrapping up and caring for the hand. It is insisted that this was matter for an expert to testify about and that a doctor would have more knowledge of the amount of blood which would fill a handkerchief than an ordinary person. It is hardly possible to conceive that the position is seriously maintained, and it is of such slight consequence in the case that it would scarcely be profitable to express reasons to demonstrate either the ineompetency of the evidence, or to sustain the position, which is equally true, that as the record stands the error in no wise prejudiced the appellant.
There are no other errors of gravity presented by the record or in the arguments of counsel, and the resolution of these three questions against the appellant must of necessity lead to the affirmance of the judgment. The judgment is right, and it will be affirmed.

Affirmed.