## APRIL TERM, 1900.

[No. 1725.]
### CURRAN v. ROTHSCHILD ET AL.

1. ATTACHMENT—TRANSFER OF PROPERTY—INTENT OF DEBTOR.

To justify an attachment on the ground that the debtor has transferred his property so as to hinder or delay his creditors, it is not necessary to show that the transfer was made with a dishonest motive or with a purpose to cheat creditors and deprive them of the power ever to realize on their claims. If a debtor assigns or transfers his property for the purpose of hindering or delaying his creditors in the collection of their claims, his act is fraudulent within the meaning of the law and will justify an attachment although he may intend that eventually the proceeds of the property shall be applied to the payment of their claims, and honestly believes that by preventing them from sacrificing his property they will ultimately realize more money.

2. EVIDENCE—FRAUDULENT ASSIGNMENT—INTENT OF ASSIGNOR.

On an issue as to whether or not a debtor has transferred his property for the purpose of defrauding his creditors where the fraudulent intent of the assignor is not a conclusive legal presumption, and from the evidence the intent is doubtful, it is competent for the assignor to testify as to his intent and it would be erroneous to refuse to permit him to do so. But where the intent appears upon the face of the transaction, or where the undisputed facts are irreconcilable with a lawful purpose, his testimony as to what his intentions were would be without effect and should not be received.

3. EVIDENCE—REPETITION OF TESTIMONY.

It is not error to refuse to permit a witness to repeat in substance testimony already given although expressed in different words.

4. PRACTICE—INSTRUCTIONS—IMMATERIAL ERROR.

Where the facts of a case are such that the court should direct a verdict and the jury returns the verdict the court should have directed, it is immaterial that improper instructions were given or proper ones were refused.

5. FRAUDULENT CONVEYANCE—INTENT.

On an issue as to whether or not a transfer of property is fraudulent as to creditors where it is admitted that the intent was to delay creditors, or where the nature of the transaction was such that its necessary result was to hinder and delay creditors, it is for the court to say whether or not it was fraudulent.

VOL. XIV—32

*Appeal from the District Court of Arapahoe County.*

Mr. W. W. DALE, for appellant.

Messrs. BICKSLER & McLEAN, for appellee.

THOMSON, J.

The appellees brought this action against the appellant to recover the amount due on a dishonored check. An affidavit for attachment was made, and a writ of attachment issued in the cause. The ground for attachment, stated in the affidavit, was that the defendant had fraudulently conveyed, transferred and assigned his property and effects, so as to hinder and delay his creditors. This allegation was traversed by the defendant, and the issue so formed was tried by a jury, who returned a verdict sustaining the attachment.

The defendant was the only witness in the case. He was first called by the plaintiffs in support of the ground for attachment alleged by them, and afterwards he testified for himself. His testimony was perspicuous and consistent, and made the transaction on which the attachment was based, very clear and intelligible. The defendant was doing business in Denver and Cripple Creek under the name of "the Berlin Cloak Company." The value of his entire stock at both places was about $33,000. He was largely involved, and among his creditors were the plaintiffs. He had given them a check for the amount due them, but it was returned protested for nonpayment. Immediately afterwards, upon the suggestion of a Mr. Annisfield, one of the defendant's creditors, a corporation was organized, called "the Berlin Cloak and Suit Company," to which the defendant transferred his entire stock and all his property. The capital stock of the company was divided into 30,000 shares, 29,997 of which were issued to the defendant, and one share each to three other parties. The shares issued to the defendant were embraced in one certificate, and, immediately after receiving it,

he caused it to be transferred to his creditors, and new certificates made out in their names severally, proportioned to the amounts of their respective claims. All these proceedings were conducted without the knowledge of the creditors, except Annisfield. Before the corporation was formed a general assignment for the benefit of all the defendant's creditors was suggested, but he did not favor the suggestion, preferring the course which was afterwards pursued. His reason for his preference was that the good will of the business was his most valuable·asset, and that there was no method other than the one he adopted to preserve it for the creditors. These were to have the privilege of taking the stock as absolute payment, or as collateral security, as they might deem best. In the transaction, nothing was reserved for the defendant, nothing was to be returned to him, and no present or future personal benefit to him, was contemplated.

The statutory ground for attachment upon which the plaintiffs proceeded is as follows: "That the defendant has fraudulently. conveyed or assigned his property or effects, so as to hinder or delay his creditors, or some one or more of them." Civil Code, sec. 92. The main controversy between counsel is concerning the meaning of the foregoing language. The opinion of counsel for the defendant seems to be that to justify an attachment upon that ground, the transaction must be infected with fraud in the general and odious sense of the term, and that to sustain the attachment against a traverse, it is incumbent upon the plaintiffs to show that the motive of the transfer was dishonest, and its purpose to cheat creditors and deprive them of the power ever to realize anything on their claims. Proof of such intent would, of course, be sufficient, on the principle that the greater includes the less, but to authorize an attachment, the existence of such extreme conditions is not required by the statute. A debtor may have no intention of defeating the claims of his creditors; he may sincerely believe that ultimately it will be better for them, and they will realize more money, if they are prevented from seizing and sacrificing his property; yet if he conveys

or assigns it for the purpose of hindering or delaying them, his act is fraudulent within the meaning of the law, and the fraud with which he is chargeable is not constructive, but actual. Creditors have the right to use the machinery of the law for the collection of their debts; a disposition by the debtor of his property which puts it beyond the reach of legal process, hinders and delays them, and if his intention in making the transfer is to deprive them of the benefit of their legal remedies, even though he also intends that eventually the proceeds of the property shall be applied in payment of their claims, the transaction is fraudulent. It is the intent to delay creditors which constitutes the act a fraud upon them. *Spencer v. Deagle*, 34 Mo. 455; *Weare Commission Co. v. Druly*, 156 Ill. 25; *Knight v. Packer*, 12 N. J. Eq. 214; *Van Nest v. Yoe*, 1 Sanf. Ch. 4; *Wells v. National Bank*, 23 Colo. 534; *Buell v. Rope*, 6 App. Div. N. Y. Sup. 113.

In this case the intention of the defendant is clearly deducible from the facts of the transaction, but it is evident that he had no desire for concealment, and, so far as he was permitted to do so, frankly stated why the corporation was formed, and his property transferred to it. His object, which he took no pains to hide, was to prevent the good will from being destroyed, and the goods from being sacrificed by forced sales on execution. He insisted that while the transfer was of no personal benefit to himself, it was of advantage to his creditors, because the course he pursued would, as he thought, eventually have enabled them to realize their claims in full, whereas, if the transfer had not been made, they would have been unable to obtain more than twenty or thirty cents on the dollar. We see no reason to doubt that he desired the payment of his debts, and thought that by placing his property beyond the reach of legal process, the end could ultimately be accomplished. But, however desirous he may have been that his creditors should be satisfied, the purpose and effect of his action was to delay them, and the transfer was therefore fraudulent.

This question was put to the defendant by his counsel:
" What was your purpose in selling your store to the Berlin
Cloak and Suit Company?" The court sustained an objection
to the question, and the ruling is assigned for error. Where
the fraudulent intent is not a conclusive legal presumption
from the facts, the party who made the conveyance is a com-
petent witness as to what his purpose actually was. If, from
the evidence, the intent is doubtful, as he is the only person
who could know with certainty, what, in fact, it was, it is
proper to interrogate him in relation to it, and a refusal to
permit him to answer the question, would be error. But
where the intent of the party appears upon the face of the
transaction, or where the undisputed facts are irreconcilable
with a lawful purpose, his testimony as to what his motives
really were, would be without effect, and should not be re-
ceived. In *Seymour v. Wilson*, 14 N. Y. 567, Denio, C. J.,
in discussing the question of the competency and propriety
of such testimony, said :

" There are cases which present circumstances in them-
selves conclusive evidence of a fraudulent intent; and there
no proof of innocent motives, however strong, will overcome
the legal presumption. * * * In such cases the oath of the
assignor that his motives were pure, would be idle, and could
not affect the determination one way or the other. But
where the facts do not necessarily prove fraud, but only tend
to that conclusion, the evidence of the party who made the
conveyance, when he is so circumstanced as to be a compe-
tent witness, should be received for what it may be considered
worth."

The foregoing opinion was approved and followed by this
court in the case of *Love v. Tomlinson*, 1 Colo. App. 516. In
the latter case there was nothing on the face of the transac-
tion to stamp it as fraudulent, and the circumstances were
not in themselves conclusive ; and it was held that an in-
quiry of the party as to his intent in making the transfer was
proper. And again, in *Brown v. Potter*, 13 Colo. App. 512,
a case of a sale by a debtor of his property to one of his cred-

itors, in the facts and circumstances of which, separately considered, there was nothing indicative of an unlawful purpose, we held that the ruling of the court admitting the testimony of the parties as to their intentions in the transaction, was correct. But this court has not decided, as counsel seems to suppose it has, that such testimony would be admissible without regard to the character impressed upon the face of the transaction itself, or that with which the attendant circumstances invested it.

This transfer by the defendant to the Berlin Cloak and Suit Company was a method adopted by him, after consultation with Mr. Annisfield, of assigning his property for the benefit of his creditors ; but it was not the statutory method, and it has no countenance or protection from the statute. He passed his title to the corporation, receiving in exchange, its stock, to which he proposed that his creditors should look for their money. The goods which his creditors had the right to subject to the payment of their demands were transferred to the company so as to deprive them of the immediate remedy to which they were entitled, and compel them to submit to a delay until there should be a market value for the stock, or until their claims might be satisfied from dividends From these facts the intent must be conclusively presumed, and a statement by him of what was passing in his mind at the time of the transfer would have amounted only to a waste of time.

But for another reason the exclusion of the evidence was not error, or, at least, was not error from which the defendant suffered detriment. As we have said, his testimony was open and frank. He laid bare the entire transaction and its moving purposes. He exhibited his intentions so clearly that further evidence could have shed no additional light upon the situation. He made himself so fully understood, that he lost nothing by being refused permission to say again, although, perhaps, in different words, what he had already said with sufficient distinctness. And there is no rule which requires a court to allow a witness to repeat himself inde-

finitely. The objection to the question was properly sustained.

Complaint is made of instructions given for the plaintiffs, and the refusal of instructions asked by the defendant. We shall not discuss the questions raised in this connection, because we do not believe them to be important. There was no question of fact in the case. There was nothing to be submitted to the jury, and, upon the evidence, it was the duty of the court to direct a verdict for the plaintiffs. Such being the situation, it is immaterial whether improper instructions were given, or proper ones refused. But the learned counsel of the defendant dissents from this view. He directs our attention to section 1529 of the General Statutes, which occurs in the chapter entitled "Frauds and Perjuries," and which contains the following: "The question of fraudulent intent, in all cases arising under the provisions of this title, shall be deemed a question of fact, and not of law." Upon this provision he builds an argument to the purport that as the question of intent is a question of fact, whatever may be the evidence, or the aspect of the case as presented, the intent of the party must, in all cases, be submitted to the jury as a question for them to determine. It is true that in actions at law, questions of fact must be passed upon by the jury. They are the exclusive judges of the credibility of witnesses, and of the weight to which testimony is entitled. But in order that there may be a question of fact for them to decide, some fact must be in controversy. Where the intent to delay creditors is conceded by the party against whom it is charged, it is not to be considered as a question of fact. The intent is not in question at all. Also, where the nature of the transaction was such that its necessary result was to hinder and delay creditors, it is for the court to say whether it was fraudulent or not. In *Burr v. Clement*, 9 Colo. 1, the statutory provision we have quoted was under consideration, and the court approved and adopted the opinion of the chancellor, in *Cunningham v. Freeborn*, 3 Paige Ch. 557, that, when a party has intentionally executed an assignment

or conveyance of his property, which must hinder or defraud his creditors of their just demands, the question whether the conveyance is fraudulent or not, necessarily becomes a question of law, and not of fact. The same statutory provision had been enacted in New York, and in considering it, in the case last mentioned, the chancellor further said :

" But if a party admits that he intended to do a particular act, the legal effect of which act the adverse party supposes to be to delay, hinder and defraud him as a creditor, and to be a violation of the statute, the question whether the act complained of is such a fraud as the legislature intended to guard against, necessarily becomes a question of law, and must be decided as such by the court."

And in *Brown v. Potter*, *supra*, it was held by this court that where, upon the question of fraudulant intent, the evidence was one-sided, it was the duty of the court to direct a verdict.

If the court had directed a verdict for the plaintiffs in the case at bar, it would only have performed its duty. However, a correct result was reached, and the fact, merely, that the case was submitted to the jury, gives the defendant no right to complain of the action of the court in relation to instructions.

The judgment will be affirmed.

*Affirmed.*